## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JESSICA LOPEZ**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 19-5104-KSM** |
| **CITY OF LANCASTER, et al.**, | |
| Defendants. | |

## MEMORANDUM

**MARSTON, J.**                                                    **August 9, 2021**

Plaintiff Jessica Lopez filed this lawsuit against Defendants the City of Lancaster and Detective Nathan Nickel,[1] in both his official and individual capacities, alleging that Nickel used excessive force while arresting Lopez and then sexually assaulted her during a search of her person while she sat handcuffed in the backseat of a patrol car.[2]  (Doc. No. 1.)  In her complaint, Lopez asserts claims for excessive force and sexual assault under 42 U.S.C. § 1983 and Pennsylvania state law, contending that Nickel violated her rights under the Fourth, Eighth, and Fourteenth Amendments.[3]  (*Id.*)

---

[1] Nickel was identified in Lopez's complaint as "Detective Nichols" (*see* Doc. No. 1 at p. 4), and to date the parties have not filed a stipulation to amend the caption.  However, they agree the correct spelling of his last name is Nickel.  (*See* Doc. No. 33 at p. 1 n.1; Doc. No. 40-2 at p. 1.)  Also, although Nickel was a Detective Sergeant with the City of Lancaster Police Department at the time of the incident, he has since been promoted to the rank of Lieutenant.  (*See* Doc. No. 33 at p. 1 n.1.)

[2] Lopez stipulated to the dismissal of the claims against the City of Lancaster and Nickel in his official capacity.  (Doc. No. 31.)  Thus, only the individual capacity claims against Nickel remain.

[3] Only a Fourth Amendment violation remains now that Lopez has dismissed her claims against the City of Lancaster and Nickel in his official capacity.  (Doc. No. 31.)  Lopez cannot raise an Eighth Amendment claim against Nickel in connection with her arrest because "the Eighth Amendment applies only to prisoners who have been convicted of a crime."  *Nelson v. Mattern*, 844 F. Supp. 216, 222 (E.D. Pa. 1994); *see also Graham v. Connor*, 490 U.S. 386, 398–99 (1989); *Lora-Pena v. Fed. Bureau of*

Nickel has moved for summary judgment.  (Doc. Nos. 32–34 & 41.)  First, Nickel argues that summary judgment is warranted on Lopez's excessive force claim because his arrest and subsequent search of Lopez was constitutionally permissible and he should be afforded qualified immunity.  (Doc. No. 34 at pp. 5–14; Doc. No. 42 at pp. 1–7.)  Second, Nickel asserts that Lopez's assault and battery claim under § 1983 fails as a matter of law and likewise fails under state law because he should be afforded official immunity under Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. §§ 8541, *et seq.*  (Doc. No. 34 at pp. 15–18.)  Finally, Nickel argues that Lopez's request for punitive damages must be dismissed as Lopez has failed to produce any evidence that he had an evil motive or that he was recklessly indifferent to Lopez's constitutional rights.  (*Id.* at pp. 18–19.)

Lopez opposes Nickel's motion, arguing that there are genuine issues of material fact and credibility determinations that must be resolved by a jury.  (*See* Doc. Nos. 40 & 43.)  Also, Lopez asserts that "[t]here is a material question of fact as to whether [Nickel] used force maliciously and sadistically to cause harm," and therefore Nickel is not entitled to qualified or official immunity.  (Doc. No. 40 at pp. 16–17.)  And Lopez contends that the jury must determine whether punitive damages are warranted given the facts of this case.  (*Id.* at p. 17.)

Additionally, Lopez has moved to incorporate after-discovered evidence—a Facebook video posted on July 5, 2018, allegedly of Nickel arresting someone else—into her response in opposition to Nickel's motion for summary judgment.  (Doc. No. 44.)  Nickel has filed a

---

*Investigation*, 529 F.3d 503, 505 (3d Cir. 2008).  Further, as discussed below in Part II.B.1.b, Lopez's sexual assault claim arises out of the search of her person and sounds in the Fourth Amendment, not the Fourteenth Amendment.  *See K.K. ex rel. Knowles v. Weeks*, Civil No. 1:CV-04-2290, 2007 WL 2782273, at *6–7 (M.D. Pa. Sept. 21, 2007).  Lopez appears to tacitly acknowledge this fact; her brief in opposition to Nickel's motion for summary judgment discusses only the Fourth Amendment, not the Fourteenth Amendment (or, for that matter, the Eighth Amendment).  (*See generally* Doc. No. 40.)

response in opposition to Lopez's motion.  (Doc. No. 46.)

Both motions have been fully briefed; the Court held oral argument on March 10, 2021; and they are now ripe for disposition.

For the reasons that are discussed below, the Court grants in part and denies in part Nickel's motion for summary judgment.  Further, the Court denies as moot Lopez's motion to incorporate after-discovered evidence.

## I.    BACKGROUND

Taking the facts in the light most favorable to Lopez, the non-moving party, the relevant facts are as follows:

On the evening of November 8, 2017, City of Lancaster Police Officers TJ Sinnott and Ryan Yoder conducted a traffic stop of a Toyota sedan on the 500 block of Poplar Street in Lancaster, and additional officers, including Nickel, arrived at the scene shortly thereafter.  (Doc. No. 33 at ¶ 3; Doc. No. 40-2 at ¶ 3.)  Officer Sinnott approached and spoke with the driver of the vehicle, while Officer Yoder and Nickel approached the passenger side.  (Doc. No. 33 at ¶ 5; Doc. No. 40-2 at ¶ 5.)  The stop was witnessed by Lopez's friend, Michelle Henson, who at the time lived on the 500 block of Poplar Street.  (Doc. No. 40-1 at ¶ 8; Doc. No. 42 at ¶¶ 8, 9; Doc. No. 40-4, Henson Sep. 3, 2020 Dep. Tr. ("Henson Dep.") at 7:14–22.)

Nickel and Lopez recognized each other from a prior encounter, and Nickel started to talk to Lopez and the other passenger in the vehicle.  (Lopez Dep. at 71:16–72:10.)  After a short time, everyone was asked to get out of the car.  (*Id.* at 72:14–73:1.)  Once Lopez exited the car, another male officer conducted a pat down search of Lopez, and nothing was found on her person.  (*Id.* at 70:5–8, 72:14–73:1, 73:18–74:6.)  Afterwards, Nickel directed Lopez to the side and asked her to give him the marijuana.  (*Id.* at 73:2–8.)  During her deposition, Lopez testified

that she lied to Nickel at that point, and claimed that she did not have any marijuana despite the fact she had marijuana and cocaine hidden in her bra.  (*Id.* at 73:15–22, 70:13–21.)  Additionally, Lopez admitted that she may have smelled like marijuana at the time of her conversation with Nickel, since she had smoked marijuana earlier.  (*Id.* at 73:9–14.)

Following this conversation, Nickel asked a female officer to come over and conduct another search of Lopez.  (*Id.* at 73:18–74:6.)  Again, no contraband was found, and Nickel started "really getting upset" and grabbed Lopez's arm.  (*Id.* at 75:23–76:19.)  Lopez tried to pull away; then Nickel and another officer grabbed her, threw her against a car, and put her in handcuffs.[4]  (*Id.* at 76:1–19, 141:2–21 ("I went to pull away and then [Defendant] grabbed me. There was like a little tussle.  The other officer was involved as well.").)

Lopez's friend, Henson, also claims that she witnessed a "tussle" between Lopez and Nickel, who Henson also knew from a prior encounter.  (Henson Dep. at 35:14–36:18.)  Henson recalls that she saw Nickel push Lopez against a car in order to place her in handcuffs.  (*Id.* at 16:2–19; 17:8–24.)  At the time, Henson worried that Lopez's arm was going to break because of the way Nickel held it.[5]  (*Id.* at 21:18–22:3.)

Nickel placed Lopez in the back of his patrol car and then left her sitting there.  (Lopez Dep. at 76:9–13.)  Lopez testified that at that point, she was uncertain why she was being arrested.  (*Id.* at 76:9–13.)

After some time, Nickel returned to his patrol car and again asked Lopez to give him the

---

[4]  Lopez also testified during her deposition that there were about four or five officers standing around her at the point Nickel grabbed her arm.  (*Id.* at 76:20–77:2.)

[5] Henson recounts an invasive search of Lopez by Nickel.  (*Id.* at 18:5–20 (testifying that Nickel "was searching all through her body, her back pockets, her front pockets, you know, checking the band of her bra, searching her, searching her").)

marijuana.  (*Id.* at 78:1–22.)  Lopez testified that she again lied to Nickel and stated, "I don't

have anything, and I'm not giving you anything."  (*Id.* at 78:17–79:1.)

Before Lopez was transported to the police station, the internal video camera in Nickel's

patrol car was activated.  (Doc. No. 33 at ¶ 17; Doc. No. 40-2 at 17.)  As Nickel drove, Lopez

leaned forward a few times, disappearing behind the divider in the patrol car.  (Lopez Dep. at

80:17–20, 86:18–23.)  Although Nickel told Lopez to stop leaning forward, she continued to do

so.  (*Id.* at 87:7–17.)  Lopez testified that when she leaned forward, she managed to get the

marijuana out of her bra.  (*Id.* at 81:3–21.)  Despite being in handcuffs, Lopez used her hands to

put the marijuana in her mouth to swallow it.  (*Id.* at 81:22–82:4.)

Nickel pulled over in front of the police station, got out of the patrol car, and opened the

back door.  (*Id.* at 90:4–91:7.)  He found Lopez chewing something and saw white powder all

over the back seat.[6]  (*Id.* at 82:2–9.)  Nickel asked Lopez what she was eating, and Lopez

responded "weed" and opened her mouth to show him "the green leafs [sic] on her lips."  (*Id.* at

84:2–6.)  Lopez testified that she believed that the cocaine had also fallen out of her bra.  (*Id.* at

82:5–9.)  However, Lopez explained that she did not try to swallow the cocaine because she is

"kind of smarter than that, and I know should cocaine explode in your stomach, you will die.  So,

no, I was not trying to swallow cocaine."  (*Id.* at 82:13–17.)

According to Lopez, after she responded "weed" was in her mouth, Nickel leaned in the

back of the car and started to pat her legs and grab the front of her shirt.  (*Id.* at 106:3–19

("That's when he starts patting my legs, and he's starting to check around the seat.  He's asking

me what it is.  He's patting at my legs."))  Lopez testified that although Nickel grabbed at the

---

[6] Nickel testified during his deposition that when he saw the white, powdery substance he immediately
thought it was cocaine or heroin and was concerned for Lopez's health and life.  (Nickel July 20, 2020
Dep. Tr. ("Nickel Dep.") at 46:22–47:23.)

front of her shirt, he did not go underneath her shirt until a second patrol car pulled up and a
female officer came up to the car.[7]  (*Id.* at 109:10–24, 91:18–92:10.)

Lopez is uncertain how many times Nickel reached under her clothing on her front, but
recalls that "his hands at some point were underneath my shirt, and his hands at some point were
over top of my shirt.  At some point, his hands touched me in several different ways."[8]  (*Id.* at
99:2–100:2.)  Throughout the incident, Nickel demanded that Lopez "Give [him] the weed."  (*Id.*
at 97:15–16.)  Lopez does not recall how long the search took, but "it felt like forever."  (*Id.* at
93:7–8.)  Eventually Lopez reached into her bra, pulled out the remaining marijuana she had
hidden, and threw it on the seat.  (*Id.* at 97:18–20.)

As a result of the events of November 8, Lopez ended up with "wrist marks" from her
struggle with the officers at the scene of her arrest, as well as "fingerprints" on her arms.  (*Id.* at
130:15–18, 142:23–143:7.)  Lopez also avers that the incident gave her "anxiety," that the police
now "freak[] her out," and that she "cannot trust that [her] City police department is . . . out to
help her."  (*Id.* at 130:18–131:2.)  She is now "scared" and "terrified" of police officers, and
when she sees them in public "they make comments" about the incident.  (*Id.* at 131:2–7.)

Lopez was charged with possession of cocaine, possession of a small amount of
marijuana, tampering with evidence, and disorderly conduct.  (Doc. No. 33 at p. 8.)  She pled
guilty to all charges.  (Lopez. Dep. at 136:20–22.)  Lopez did not appeal her conviction, so the

---

[7] Lopez testified that the female officer stood behind Nickel and could not see what Nickel was doing.
(*Id.* at 91:22–92:1.)  At one point, Lopez asked the female officer why she was not searching, rather than
Nickel.  (*Id.* at 92:7–12 ("If you're standing right there, why did you have a male officer grabbing on my
chest and searching me?").)

[8] Later in her deposition, while viewing the video of the search, Lopez testified that Nickel reached up her
back, not down it.  (*Id.* at 114:12–14 ("There he goes.  In the back of my jacket.  Arms, up the back.
Okay.  I was mistaken about down.  He went up.").)

Common Pleas judgment is valid and final.[9]  (*See generally* Docket, Commonwealth v. Lopez, No. CP-36-CR-0006127-2017 (Pa. Ct. C.P., Lancaster Cnty.).)

## II.    MOTION FOR SUMMARY JUDGMENT

### A.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In examining the motion, we must draw all reasonable inferences in the nonmovant's favor.  *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159–60 (3d Cir. 2003).

Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment.  *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (citation omitted).  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from those facts" are matters left to the jury.  *Anderson*, 477 U.S. at 255.

The initial burden of demonstrating that there are no genuine issues of material fact falls

---

[9] The Court notes that Lopez's complaint is not barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  The right to be free from the unreasonable use of force and assault and battery does not "implicitly undermine [Lopez's] disorderly conduct conviction."  *El v. City of Pittsburgh*, 975 F.3d 327, 338–39 (3d Cir. 2020) ("[E]ven if an individual is engaged in disorderly conduct, there still could be a level of responsive force that is reasonable and a level that is 'excessive and unreasonable.'" (quoting *Nelson v. Jashurek*, 109 F.3d 142, 145 (3d Cir. 1997)).

on the moving party.  *Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  The non-moving party must show more than the "mere existence of a scintilla of evidence" in support of its position.  *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

**B.    Discussion**

**1.    Lopez's 42 U.S.C. § 1983 Claims**

Lopez brings claims against Nickel under 42 U.S.C. § 1983 for excessive force and sexual assault in violation of the Fourth Amendment.[10]  (Doc. No. 1.)  "To state claim for relief under Section 1983, 'a plaintiff must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States.'"  *Spiker v. Whittaker*, 553 F. App'x 275, 278 (3d Cir. 2014) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165–66 (3d Cir. 2013)).  "Section 1983 does not confer any substantive rights.  Rather, it 'merely provides a method for vindicating rights elsewhere conferred.'"  *Washington v. Hanshaw*, 552 F. App'x 169, 172 (3d Cir. 2014)

---

[10] The Court is troubled by Nickel's assertion that he did not understand Lopez's excessive force claim to arise out of Nickel's alleged actions at the scene of Lopez's arrest *and* in the backseat of Nickel's patrol car.  (*See* Doc. No. 34 at p. 6 n.2.)  A review of Lopez's deposition transcript shows that Nickel was on notice of this claim and should have addressed it in his opening brief rather than reserving his right to do so in a footnote.  (*See, e.g.*, Doc. No. 33-5, Lopez July 20, 2020 Dep. Tr. ("Lopez Dep.") at 76:2–19 ("They ended up grabbing me, threw me up against the car, that whole bit . . . .")); *see also id.* at 141:2–11 (Lopez testifying that she was raising an excessive force claim related to the events at the scene of her arrest).)  The Court reminds Nickel that ordinarily, "[a]n issue is waived unless a party raises it in its opening brief."  *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994).  Courts will generally refuse to consider arguments raised for the first time in a reply brief.  *See, e.g.*, *Hayes v. Silvers, Langsam & Weitzman, P.C.*, 441 F. Supp. 3d 62, 66–67, nn. 4–5 (E.D. Pa. 2020); *McCowan v. City of Philadelphia*, Civil Action No. 2:19-cv-03326-KSM, 2020 WL 6485097, at *3 n.5 (E.D. Pa. Nov. 4, 2020).

Here, Plaintiff does not argue Nickel has waived this argument.  The Court will consider the arguments set forth in Nickel's reply, but counsel should not expect such leniency in the future.

(quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

Here, Lopez alleges that she was deprived of her right to be free from excessive force and sexual assault—rights secured by the Fourth Amendment.  Further, in her opposition brief, Lopez clarifies that she is bringing her excessive force and assault and battery claims based on two separate interactions with Nickel: "(1) Defendant grabbed Plaintiff's arm and slammed her against a car; and (2) Defendant sexually assaulted Plaintiff within a police vehicle."  (Doc. No. 40 at p. 6.)  We address each claim in turn.

### a.    The Arrest

Nickel argues that his conduct while placing Lopez under arrest was constitutionally permissible as a matter of law.  (Doc. No. 41 at pp. 2–3.)  Nickel asserts that the minimal force used during this incident does not rise to the level of excessive force.  (*Id.* at 3.)  Additionally, to the extent there is any issue of material fact with respect to Lopez's constitutional rights, Nickel claims he should be afforded qualified immunity.  (*Id.* at pp. 6–7.)

### i.   There Is a Genuine Dispute of Material Fact as to Whether Nickel Used an Excessive Amount of Force During the Arrest

The Fourth Amendment requires that police officers use "reasonable" force in effectuating an arrest.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Courts must tailor their analysis to balance the "nature and quality of the intrusion on the individual's Fourth Amendment rights" with the government's countervailing interests.  *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).  In making this determination, courts consider the following factors:  "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight," *id.*, as well as whether the suspect was injured, whether she was violent or dangerous, the duration of the officer's action, whether the officer committed the

action while effecting an arrest, the chance that the suspect may be armed, and the number of people the officer is dealing with at once, *El*, 975 F.3d at 336.

The standard for evaluating an officer's reasonableness is an objective one. *Graham*, 490 U.S. at 396–97.  Courts do not inquire into what the officer subjectively thought; rather, the focus is on whether a reasonable officer on the scene would have an objective reason for acting in the same manner. *Id.*  Courts must remember that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397.

Whether an officer used excessive force is a question of fact and must be decided by a jury if the facts are disputed. *Abraham v. Raso*, 183 F.3d 279, 289–90 (3d Cir. 1999); *Finneman v. SEPTA*, 267 F. Supp. 3d 639, 648 (E.D. Pa. 2017).  However, if the undisputed facts, viewed in the light most favorable to the plaintiff, show that the officer's use of force was objectively reasonable, the officer is entitled to summary judgment. *See Johnson v. City of Philadelphia*, 837 F.3d 343, 349 (3d Cir. 2016); *Finneman*, 267 F. Supp. 3d at 648.

Courts have repeatedly denied summary judgment in excessive force cases where the circumstances leading up to the officer's use of force, or the amount of force used, are disputed. *See, e.g.*, *Price v. City of Philadelphia*, 239 F. Supp. 3d 876, 892–93 (E.D. Pa. 2017) (denying summary judgment where there were "genuine issues of material fact regarding whether [p]laintiff's actions justified [defendant's] use of force against him"); *id.* at 892 (collecting cases); *Israel v. Smith*, Civil Action No. 13-cv-0097 (PGS)(LHG), 2017 WL 5709559, at *6 (D.N.J. Nov. 27, 2017) (denying summary judgment where the plaintiff and the officer had varying accounts of the circumstances that led the officer to push the plaintiff against a car, throw him on the ground, and kneel on his back to handcuff him); *Lamb v. Wysocki*, Civ. Action

No. 06-2166(NLH), 2008 WL 1732973, at *6 (D.N.J. Apr. 10, 2008) (denying summary judgment where the plaintiff and the officer disagreed on who threw the plaintiff on the hood of a police car and handcuffed him); *see also El*, 975 F.3d at 337–39 (affirming a denial of summary judgment where an officer had "slammed" a suspect into a storefront and onto the pavement, reasoning that the events leading up to the use of force were ambiguous); *Deville v. Marcantel*, 567 F.3d 156, 161, 167–68 (5th Cir. 2009) (reversing grant of summary judgment where there was a factual dispute over the events leading up to the use of excessive force and "over the nature of [the plaintiff's] resistance").

Here, taking the facts in the light most favorable to Lopez, there does not appear to have been much justification for the use of force when Nickel decided to handcuff Lopez.  According to Lopez, two officers had just conducted separate pat down searches of Lopez and found no contraband or weapons on her person.  (*See* Lopez Dep. at 75:23–76:19.)  When Nickel asked Lopez for the marijuana, Lopez claimed she did not have any marijuana.  (*Id.* at 73:15–22.)  Without warning, Nickel grabbed Lopez's arm.  (*Id.* at 76:2–19.)  Lopez responded by pulling away, and Nickel and another officer then threw her body against a car and handcuffed her.  (*Id.* at 76:1–19, 141:2–21.)[11]  At this time, there were four or five officers standing around Lopez. (*Id.* at 76:20–77:2.)  Other than Lopez's attempt to pull away when her arm was grabbed unexpectedly, nothing suggested at that point, after two searches of Lopez's person, that she was dangerous, armed, or an imminent threat to the safety of the police officers or others in the area.

Lopez asserts that Nickel's force left her wrists bruised with "red rings" from the handcuffs and that there were fingerprints on her arms.  (*Id.* at 142:12–143:7.)  Although Lopez's

---

[11] Henson also testified that she witnessed Nickel push Lopez against a car in order to place her in handcuffs.  (Henson Dep. at 16:2–19, 17:8–24.)  Henson worried that Lopez's arm was going to break because of the way Nickel was holding it.  (*Id.*)

injuries were minor, there does not appear to have been much justification for any use of force, especially given that it is unclear what crime Lopez had committed at the time she was placed in handcuffs.

Construing the facts in the light most favorable to Lopez, there are genuine issues of material fact regarding whether any of Lopez's actions justified Nickel's use of force against her.[12]  A reasonable jury could find that Nickel's use of force was excessive under the circumstances.  Therefore, the Court cannot conclude that Nickel's use of force against Lopez while placing her under arrest was objectively reasonable as a matter of law.

> ### ii.  *Nickel Is Not Entitled to Qualified Immunity at this Time*

Nickel also argues that even if there are issues of material fact with respect to Nickel's use of force at the time of Lopez's arrest, the Court should grant summary judgment on this claim because Nickel should be afforded qualified immunity as a matter of law.  (Doc. No. 34 at pp. 15–19.)  The Court disagrees.

Where a government official is being sued in his personal capacity, the individual is entitled to summary judgment if he qualifies for "qualified immunity."  To analyze whether qualified immunity applies, the court must ask "(1) whether the officer violated a constitutional right, and (2) whether the right was clearly established, such that 'it would have been clear to a reasonable officer that his conduct was unlawful.'"  *El*, 975 F.3d at 334 (quoting *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011) (cleaned up)).  If the constitutional right is clearly established, then the court must determine whether the officer had "fair notice that her conduct was unlawful."  *Id.* (quoting *Kisela v. Hughes*, 138 S. Ct. 1138, 1152 (2018) (per curiam)).  The

---

[12] The Court notes that much of Henson's version of events deviate from Lopez's own retelling—to say nothing of the version of events propounded by the officers who were on the scene.  Yet, at this stage in the proceedings, the Court may not make any credibility determinations.

Court may elect to analyze either the constitutional violation or the clearly established prong first.[13] *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021).

Where courts have concluded that there are genuine disputes of material fact as to whether the officer committed a constitutional violation, courts find that the officer is not entitled to qualified immunity at the summary judgment stage. As such, the Court concludes Nickel is not entitled to qualified immunity given the disputed issues of material fact regarding Nickel's use of force while arresting Lopez. *See, e.g.*, *Price*, 239 F. Supp. 3d at 894 ("Here, there are disputed issues of material fact regarding both the amount of force used and Officer Simmons' potential justification for the use of force. As a result, the Court finds that Officer Simmons is not entitled to qualified immunity at this time."); *Lamb*, 2008 WL 1732973, at *7.

Nickel's motion for summary judgment will be denied with respect to this claim.

### b.    The Search

Next, Nickel argues that his search of Lopez in the back of his patrol car was constitutionally permissible as a matter of law. (Doc. No. 34 at pp. 5–10). And, once again, Nickel argues that if there is any issue of material fact with respect to Lopez's constitutional rights, Nickel should be afforded qualified immunity. (*Id.* at pp. 10–14.)

Lopez's sexual assault claim, which arises out of Nickel's invasive search of her in the back seat of his police car, sounds in the Fourth Amendment. Ordinarily, when a government

---

[13] The Supreme Court encourages lower courts to "think hard, and then think hard again" when deciding whether to first address the constitutional violation prong or the clearly established prong of the qualified immunity test. *Camreta v. Greene*, 563 U.S. 692, 706–07 (2011). The Supreme Court's recent preference has been for lower courts to decide qualified immunity cases on the basis of the clearly established prong when they are able to do so, on the theory that deciding whether there has been a constitutional violation before considering whether the right was clearly established will "sometimes result[] in the expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." *Pearson*, 555 U.S. at 236–37; *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 589 n.7 (2018); *Camreta*, 563 U.S. at 706–07.

official sexually assaults a citizen, that person has a cause of action under the Fourteenth

Amendment.  *See Doe v. City of Wilkes-Barre*, Civil Action No. 3:19-938, 2021 WL 1197627, at

*5 (M.D. Pa. Mar. 30, 2021); *Leighliter v. City of Connelsville*, Civil Action No. 17-1510, 2018

WL 6812496, at *5 (W.D. Pa. Dec. 27, 2018); *K.K. ex rel. Knowles*, 2007 WL 2782273, at *6–7.

However, when a claim of sexual assault arises out of an officer's actions in searching a suspect

during the course of an investigation or arrest, the Fourth Amendment reasonableness standard

applies.[14]  *See K.K.*, 2007 WL 2782273, at *6–7; *see also Banks v. Rozum*, 639 F. App'x 778,

782–83 (3d Cir. 2016) (per curiam); *Leighliter*, 2018 WL 6812496, at *5.  Therefore, the Fourth

Amendment governs, and the Court must determine whether Nickel's search of Lopez was

reasonable.

### i.      It Was Not Per Se Unreasonable for Nickel to Search Lopez

First, the Court must decide whether it was *per se* unreasonable for Nickel to search

Lopez when a female officer also arrived on the scene.  Here, given the exigent circumstances,

the Court finds that it was not *per se* unreasonable for Nickel to search of Lopez.  *See, e.g.*, *Small

v. Wetzel*, 528 F. App'x 202, 207 (3d Cir. 2013) ("The fact that female [prison] staff members . .

. were present [during group strip searches] does not outweigh the need for safety and

expediency in an emergency circumstance."); *see also Johnson v. Pa. Bureau of Corr.*, 661 F.

Supp. 425, 434–45 (W.D. Pa. 1987) (finding that male inmates' Fourth Amendment rights were

not violated where female guards saw them naked only in emergencies or because inmates

disregarded their own privacy).  Nickel was confronted with an arrestee who had claimed she did

---

[14] This search is most closely aligned with a search incident to arrest, which allows a police officer "to
search the person [of an arrestee] incident to a lawful custodial arrest . . . based upon the need to disarm
and to discover evidence."  *United States v. Robinson*, 414 U.S. 218, 235 (1973).  Concern about
officer safety and the destruction of evidence gives police officers "ample justification" under the Fourth
Amendment "for a search of the arrestee's person and the area 'within his immediate control'" incident to
arrest.  *Chimel v. California*, 395 U.S. 752, 763 (1969).

not possess marijuana, and now was swallowing marijuana.  Additionally, it is undisputed that there was a white, powdery substance, that Nickel believed was cocaine or heroin, on the back seat next to Lopez.  (Lopez Dep. at 82:2–9.)  Lopez herself agreed that swallowing cocaine could be deadly.  (*Id.* at 82:10–17.)  Such circumstances justified Nickel's immediate search of Lopez, rather than wasting the time it would have taken for the female officer to arrive, have the situation explained to her, and begin a search.

>    ### ii.    Taking the Facts in the Light Most Favorable to Lopez, Nickel Did Not Violate Lopez's Fourth Amendment Rights When He Searched Her

Having concluded that it was not *per se* unreasonable for Nickel to conduct a cross-gender search of Lopez, the Court next turns to whether the search was reasonable.  In order to determine whether the suspect's or arrestee's rights have been violated, courts closely examine the circumstances under which the officer conducted the search; extreme circumstances can justify more invasive searches.  *See Keating v. Pittston City*, 643 F. App'x 219, 226–27 (3d Cir. 2016) (holding strip search of parolee reasonable given officer reasonably believed parolee was attempting to destroy or hide contraband or drugs); *Bradley v. United States*, 299 F.3d 197, 201 (3d Cir. 2016) (holding Customs inspector's pat-down search was not so invasive to require reasonable suspicion despite the inspector "us[ing] her fingers to inappropriately push on [plaintiff's] breasts and into the inner and outer labia"); *Lear v. Phoenixville Police Dept.,* Civil Action No. 16-1338, 2017 WL 1805964, at *8 (E.D. Pa. May 5, 2017) (holding strip search constitutional as officer had probable cause to believe the plaintiff was concealing drugs in his crotch area); *Harden v. Flowers*, No. 01 C 7878, 2003 WL 1989616, at *5 (N.D. Ill. Apr. 29, 2003) (finding that a police officer acted reasonably when he cut open the arrestee's underwear to retrieve the drugs secreted there).

Here, even when construing all facts in the light most favorable to Lopez, the Court finds that Nickel's search of Lopez was reasonable and did not violate her Fourth Amendment rights.[15] After Lopez repeatedly leaned forward suspiciously behind the divider in the patrol car, Nickel pulled over to check on Lopez.  (Lopez Dep. at 80:17–20, 86:18–23, 90:4–91:7.)  He immediately saw Lopez was chewing on something and that there was a white, powdery substance next to her on the seat.  (*Id.* at 82:2–9.)  Although Lopez told Nickel she was chewing marijuana, Nickel was concerned for her health given the unknown white powdery substance on the seat and Nickel reasonably believed there was a genuine medical emergency.[16]  (*Id.* at 84:2–6; Nickel Dep. at 46:22–47:23.)  Lopez herself acknowledged it would be a medical emergency if a person swallowed cocaine.  (Lopez Dep. at 82:13–17.)  Indeed, courts have found that arrestees can state a valid constitutional claim for medical indifference when officers ignore signs that the arrestees have swallowed drugs.  *E.g.*, *Bradway v. Town of Southampton*, 826 F. Supp. 2d 458, 472–73 (E.D.N.Y. 2011) (collecting cases).  Nickel's search of Lopez was warranted, and his actions did not violate Lopez's Fourth Amendment rights.

Lopez argues that, even if Nickel's actions in searching her were *objectively* reasonable,

---

[15] Henson did not personally witness the alleged sexual assault of Lopez.  (Henson Dep. at 30:2–33:15.)  Therefore, the Court finds Henson's testimony on this matter is inadmissible hearsay and will not be considered by the Court on the motion for summary judgment.  Fed. R. Evid. 802; *see also* Fed. R. Evid. 602 (A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.");  *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238–39 (3d Cir. 2016) ("[H]earsay statements can be considered on a motion for summary judgment if they are capable of being admissible at trial.").

[16] Lopez argues that the Court should disregard the fact that Lopez was in possession of cocaine and marijuana, arguing that these facts "are meant to cast Plaintiff as a bad actor and distract from the Plaintiff's claims and the fact that she was the victim.  The presence of drugs . . . is also irrelevant under F.R.E. 401(a) and (b), because the existence of drugs does not make it any more or less probable that Defendant committed excessive force or committed assault and battery."  (Doc. No. 40 at p. 15.)  The Court disagrees.  The fact that Lopez possessed a green leafy substance and a white, powdery substance that Nickel reasonably believed to be illegal controlled substances is relevant to the question of whether it was reasonable to search Lopez—and it is far more probative than it is prejudicial on that point.

they may still violate her constitutional rights if his *subjective* motivation for them was unlawful—i.e., if he intended to sexually assault her, he violated her constitutional rights regardless of whether he was otherwise justified in searching her.  (*See* Doc. No. 40 at pp. 14, 16–17; *see also* Hr'g Tr. at 23:17–25, 24:18–22.)  Lopez is mistaken.

For decades, courts have applied an objective analysis when determining whether a police officer's actions are permissible under the Fourth Amendment.  *See, e.g.*, *Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *Graham*, 490 U.S. at 397 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.").  The Court will not deviate from this longstanding practice here.  Even if Nickel subjectively intended to sexually assault Lopez, an objective officer in his position would have searched Lopez for additional drugs.  Therefore, Nickel's actions did not violate Lopez's Fourth Amendment rights.

In the alternative, viewing the facts in the light most favorable to the Plaintiff, the Court also finds that because there is no constitutional violation Nickel is entitled to qualified immunity as to this claim. [17].

The Court grants summary judgment as to Lopez's Fourth Amendment claim arising out of Nickel's search of Lopez in the back of the patrol car.  Nickel's actions were reasonable and did not violate Lopez's Fourth Amendment rights.

---

[17] In the alternative, even if Nickel had violated Lopez's constitutional rights, those rights were not clearly established at the time of Lopez's arrest and the search.  There is a dearth of caselaw on the constitutionality of cross-gender searches, particularly in the context of emergency situations.  As such, even if Lopez had a right to be free from this kind of search, that right was not "sufficiently clear that a reasonable" officer in Nickel's position would have understood "that what he [was] doing violate[d] that right."  *Saucier*, 533 U.S. at 202; *see also Sampson v. Maynor*, No. 7:99-CV-51-F(1), 2001 WL 34553960, at *8–10 (E.D.N.C. Dec. 19, 2001).

### 2.     Lopez's State Law Claims

In addition to her federal constitutional claims, Lopez also brings state law assault and battery claims related to the arrest and the search.

#### *a.     The Arrest*

Nickel argues that the force he used to arrest Lopez was reasonable and thus Lopez's state law assault and battery claims fail as a matter of law.  (Doc. No. 41 at pp. 2–3.)

Under Pennsylvania law, "[a] police officer may be held liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary or excessive." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).  In evaluating whether an officer has used unnecessary or excessive force under Pennsylvania law, courts use the Fourth Amendment reasonableness standard.  *See, e.g.*, *Rodriguez v. Panarello*, 119 F. Supp. 3d 331, 345 (E.D. Pa. 2015); *Wargo v. Mun. of Monroeville*, 646 F. Supp. 2d 777, 789 (W.D. Pa. 2009).  Because, as discussed above, there is a genuine issue of material fact as to whether Nickel used excessive force in arresting Lopez, the Court denies summary judgment as to any state law claims Lopez raises regarding the level of force Nickel used at the scene of arrest.

#### *b.     The Search*

Nickel asserts that Lopez's state law claims for assault and battery related to Nickel's alleged sexual assault of Lopez during his search of her person must also fail as a matter of law. (Doc. No. 34, at pp. 20–21.)  Alternatively, Nickel argues that if these claims are found viable, his actions do not "constitute a crime, actual fraud, actual malice or willful misconduct," and he should be granted official immunity under the PSTCA.  (*Id.* at pp. 16–18.)

##### *i.     Nickel's Search was Reasonable and Did Not Constitute Assault and Battery*

Under Pennsylvania law, there is no independent tort for sexual assault; plaintiffs raising

claims arising out of an alleged sexual assault allege the common law tort of battery. *See Lee v. City of Philadelphia*, Civil Action No. 06-1155, 2008 WL 191213, at *2 (E.D. Pa. Jan. 22, 2008). Battery is an intentional harmful or offensive contact with a person, undertaken without the plaintiff's consent. *Herr v. Booten*, 580 A.2d 1115, 1117 (Pa. Super. Ct. 1990). However, under Pennsylvania law, police officers are privileged to batter others in the course of their duties; "[a] police officer may be held liable for assault and battery [only if] a jury determines that the force used in making an arrest is unnecessary or excessive." *Renk*, 641 A.2d at 293.

Courts use the same standard in evaluating unnecessary or excessive force under Pennsylvania law as they do under the Fourth Amendment. *See Rodriguez*, 119 F. Supp. 3d at 345; *Wargo*, 646 F. Supp. 2d at 789. As discussed above, no reasonable jury could find that Nickel acted unreasonably in searching Lopez, including under her clothing, for drugs when he found her chewing marijuana and saw a white, powdery substance that he reasonably believed to be cocaine or heroin, on the seat next to her. Thus, no reasonable jury could find Nickel's conduct constituted a violation of state law given these exigent circumstances.

### ii.    *Nickel Is Entitled to Official Immunity*

In the alternative, the Court finds that Nickel should be afforded official immunity under the PSTCA.

The PSTCA provides that localities are immune from suit for actions their employees take that are within the scope of their duties. *See Banks v. City of Philadelphia*, Civil Action No. 14-82, 2016 WL 1238783, at *2 (E.D. Pa. Mar. 30, 2016); *Renk*, 641 A.2d at 292. This immunity from state law claims extends to local officials, including police officers, for actions that they commit during the course of their duties. 42 Pa. Cons. Stat. § 8545; *Renk*, 641 A.2d at 292. Local officials may claim official immunity under the PSTCA by claiming that their

allegedly tortious actions were "authorized or required by law, or that [they] in good faith reasonably believed the conduct was authorized or required by law." 42 Pa. Cons. Stat. § 8546.

However, there are two relevant exceptions to this general principle. First, 42 Pa. Cons. Stat. § 8542(b)(9) provides that an officer may be held liable for "[c]onduct which constitutes an offense enumerated under section 5551(7) . . . if the injuries to the plaintiff were caused by actions or omissions of the [officer] which constitute negligence."[18] Section 5551(7), in turn, identifies nine criminal offenses related to sexual assault and sexual misconduct—none of which are applicable in this case.[19] Second, pursuant to 42 Pa. Cons. Stat. § 8550, "[i]n any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct," the employee can be held liable for damages. *Id.* For a police officer's action to qualify as willful misconduct within the meaning of the PSTCA, it must be an intentional tort. *See Renk*, 641 A.2d at 293–94.

In sum, Nickel's actions are shielded by official immunity if (1) they were performed

---

[18] Section 8542(b)(9) actually refers to "actions or omissions of the *local agency* which constitute negligence." *Id.* (emphasis added). However, Section 8545 provides that "[a]n employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties . . . to the same extent as his employing local agency . . . ." *Id.* § 8545; *see also McKay v. Krimmel*, Civil Action No. 18-2112, 2020 WL 1479133, at *4 n.2 (E.D. Pa. Mar. 24, 2020); *Dorsey v. Redman*, 96 A.3d 332, 339 (Pa. 2014).

[19] The only potential exception that could arguably apply is 18 Pa. Cons. Stat. § 3124.2, which prohibits, among other things, "indecent contact" between institutional officials and people relegated to institutions. "Indecent contact" is defined in Section 3101 as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." Touching a person's breasts qualifies as indecent contact. *See, e.g.*, *In re M.S.*, 10 Pa. D. & C. 4th 282, 282–84 (Ct. of C.P., Bucks Cnty. 1990). Even assuming that Nickel, who is not a corrections officer or otherwise employed by the institutions referenced in Section 3124.2, could be found to have violated this statute, this point is moot as Lopez does not allege that Nickel's conduct was a result of his negligence or negligence on the part of the City.

within the scope of his duties, (2) they do not fall within one of the relevant statutory official immunity exceptions, and (3) they do not constitute crime, fraud, actual malice, or willful misconduct.  Since Nickel's conduct falls outside of the statutory exceptions to immunity—Lopez alleges conduct that was intentional, not negligent—only the first and third exceptions are at issue.

As for the first exception, the Court finds that Nickel was acting within the scope of his duties when he searched Lopez.  Lopez argues that Nickel acted outside of the scope of his duties for the same reason that she says his actions were impermissible under the Fourth Amendment—because he had a subjective intention to sexually assault her.  (Doc. No. 40 at p. 17.)  However, "the standard in determining official immunity is objective—whether the public official's conduct was authorized or required by law, or that he in good faith reasonably believed the conduct was authorized or required by law."  *Dorsey*, 96 A.3d at 344; *see also* 42 Pa. Cons. Stat. § 8546(2).[20]  Here, applying that objective standard, Nickel's search was authorized by law for the same reasons it was objectively permissible under the Fourth Amendment.  *See supra* Part II.B.1.b.ii.

Next, under the third exception, the Court must determine whether Nickel's conduct constituted a crime, fraud, actual malice, or willful misconduct.  Lopez asserts that Nickel sexually assaulted her; sexual assault is both a crime and an intentional tort under Pennsylvania law.

First, the crime Nickel arguably committed is indecent assault, which occurs when a person "has indecent contact with the complainant . . . without the complainant's consent."  18

---

[20] Lopez does not argue—nor can she—that searches of arrestees, supported by probable cause, fall outside of the scope of Pennsylvania police officers' duties.

Pa. Cons. Stat. § 3126.  Indecent contact, in turn, is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person."  *Id.* § 3101.[21]  Courts considering whether contact with a person's private areas is for the purposes of sexual gratification examine the context in which the contact happened.  *See, e.g.*, *G.V. v. Dep't of Pub. Welfare*, No. 125 C.D. 2011, 2015 WL 9259998, at *4 (Pa. Commw. Ct. Dec. 17, 2015) (finding that a man who had touched his great-niece's buttocks and breasts had "engaged in activity that was consistent with indecent assault" because "there were no health reasons offered for the contact"); *In re M.S.*, 10 Pa. D. & C. 4th 282, 283–84 (Pa. Ct. Comm. Pl. 1990) (finding that a juvenile defendant who touched his classmate's breasts through her clothes on two consecutive days had committed indecent assault due to "the nature of the contact and the fact that it was repeated").

Here, given the context—Lopez's admission that she was consuming marijuana, and the white, powdery substance on the seat next to Lopez—no reasonable jury could find that any contact Nickel made with Lopez's private areas during the course of the search was for his sexual gratification.  Nickel only initiated the search after Lopez admitted to having drugs on her person.  (Lopez Dep. at 86:10–14.)  While he was searching her, he repeatedly told her to "[g]ive [him] the weed."  (*Id.* at 97:15–16.)  When Lopez handed over the remaining drugs that were hidden in her bra, the search—which had lasted approximately a minute and was in large part witnessed by two other officers—stopped.  (*See id.* at 93:1–3; 97:18–20.)  There is no evidence that Nickel intended to sexually gratify himself by searching Lopez other than her subjective assertion that that was his intention.  Taking the facts in the light most favorable to Lopez, no

---

[21] Indecent contact "even encompasses touching through the clothing."  *Comm'r v. Humphreys*, 1 Pa. D. & C. 5th 403, 407 (Ct. C.P., Fayette Cnty. 2007) (collecting cases).

reasonable jury could find that Nickel committed indecent assault when he searched Lopez.

Similarly, the intentional tort Nickel allegedly committed is battery, and as the Court concluded above, no reasonable jury could find that Nickel's conduct constituted battery.  *See supra* Part II.B.2.b.i.

Taking all the facts in the light most favorable to Lopez, no reasonable juror could find Nickel acted outside of the scope of his duties or behaved criminally, fraudulently, maliciously, or willfully when he immediately searched Lopez's person after finding her chewing marijuana and a white, powdery substance all over the back seat next to where she sat handcuffed. Therefore, the Court concludes that Nickel is entitled to official immunity as to this claim.

### 3.  Punitive Damages

Nickel argues that Lopez's request for punitive damages must be dismissed as Lopez has failed to produce any evidence that he had an evil motive or that he was recklessly indifferent to Lopez's constitutional rights.  (Doc. No. 34 at pp. 18–19.)  In response, Lopez asserts that because Lopez did not present a physical threat, Nickel was not justified in using any force. (Doc. No. 40 at p. 17.)  According to Lopez, "if a fact finder determines that Defendant acted in bad faith with the intention to harm Plaintiff and with the intention to sexually assault Plaintiff, punitive [sic] are warranted."  (*Id.*)

Pursuant to 42 U.S.C. § 1983, state actors sued in their individual capacities may be liable for punitive damages.  *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 266–67 (1981).  However, as Nickel correctly notes, to receive punitive damages, Lopez must show that Nickel had an evil motive or was recklessly indifferent to her constitutional rights.  *See Smith v. Wade*, 461 U.S. 30, 56 (1983).

Here, the Court finds that there are genuine issues of material fact as to whether Nickel

used excessive force in violation of the Fourth Amendment at the time Lopez was arrested.  As such, a jury could conclude that Nickel's conduct represented, at the minimum, "reckless indifference" to Lopez's constitutional rights.  Therefore, the Court will deny Nickel's motion for summary judgment to the extent it seeks dismissal of Lopez's request for punitive damages as to the excessive force claim.

## III.    MOTION TO INCORPORATE AFTER-DISCOVERED EVIDENCE

Although Lopez filed a motion to incorporate after-discovered evidence into her response in opposition to Nickel's motion for summary judgment, Lopez's memorandum of law only argues that the evidence "is circumstantial evidence, which casts additional doubts on Nickel's motivations and credibility" and should be viewed by a jury to "decide whether to believe plaintiff or Defendant's version of events."  (Doc. No. 44 at p. 5.)

To the extent Lopez is arguing that this video should be incorporated to bolster Lopez's excessive force claim, the Court has already denied summary judgment as to this claim. Accordingly, the Court denies Lopez's motion to incorporate this after-discovered evidence as moot.[22]

## IV.    CONCLUSION

The Court grants summary judgment to Nickel as to Lopez's sexual assault claims related to Nickel's search of Lopez while she was seated in the back of the patrol car.  The Court denies summary judgment as to Lopez's claim that Nickel used excessive force while arresting her and denies summary judgment as to Lopez's request for punitive damages.  Last, the Court denies as

---

[22] At this time, the Court does not reach the issue of whether this evidence will be admissible at trial.  If appropriate, Lopez may file a motion *in limine* and argue why this evidence should be admissible pursuant to Federal Rule of Evidence 404(b).

moot Lopez's motion to incorporate after-discovered evidence.

An appropriate order follows.