# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JESSICA LOPEZ**, | **CIVIL ACTION** |
| Plaintiff, | |
| v. | **NO. 5:19-cv-05104-KSM** |
| **CITY OF LANCASTER, et al.,** | |
| Defendants. | |

## MEMORANDUM

**MARSTON, J.**                                                                                                            **November 12, 2021**

Plaintiff Jessica Lopez brings this lawsuit against Detective Nathan Nickel,[1] alleging that he used excessive force during her arrest. (Doc. No. 1.) Lopez and Nickel have both filed motions *in limine*. (Doc. No. 55, Doc. No. 56.) For the reasons discussed below, the Court grants in part and denies in part Lopez's motion and grants Nickel's motion. Because we write only for the parties, we do not include a detailed recitation of the facts. A more thorough recitation of the facts is included in the Court's opinion on Nickel's motion for summary judgment. (*See* Doc. No. 50.)

**I.**      **Lopez's Motion *in Limine***

Lopez has moved to preclude evidence of her criminal history and evidence of the "second incident" in the back of the patrol car. (Doc. No. 56.)

The Court discusses both categories of evidence in turn.

---

[1] Nickel was identified in Lopez's complaint as "Detective Nichols" (*see* Doc. No. 1 at p. 4), and the parties have not filed a stipulation to amend the caption; however, they agree the correct spelling of his last name is "Nickel" (*see* Doc. No. 33 at 1 n.1; Doc. No. 40-2 at 1).

### A.     *Lopez's Criminal History*

Lopez moves to preclude evidence of her criminal history, including a 2011 conviction for assaulting two police officers; 2014 and 2016 convictions for retail theft, simple assault, harassment, and disorderly conduct; and a 2018 conviction stemming from her November 8, 2017 arrest, which is the arrest at issue in this case.  (*Id.*)

The Court considers whether Nickel should be precluded from presenting evidence of each conviction in turn.

#### 1.     *2011 Conviction for Assaulting Two Police Officers*

In July 2011, Lopez pled guilty to aggravated assault and aggravated harassment for striking and spitting on two Lancaster police officers.  (Doc. No. 57 at 5.)  Lopez argues Nickel should be precluded from presenting evidence of this conviction because such evidence is "meant to cast Plaintiff as a bad actor and distract from the Plaintiff's claims and the fact that she was the victim."  (Doc. No. 56 at 4.)  Nickel responds that this evidence should be admitted because it is relevant to whether the force used during the Lopez's arrest was reasonable.  (Doc. No. 57 at 5.)

In considering whether Nickel exerted excessive force in arresting Lopez, the jury must assess whether his use of force was "'objectively reasonable' in light of the facts and circumstances confronting [him]." *Graham v. Connor*, 490 U.S. 386, 397 (1989).  If Nickel was aware of Lopez's history of spitting on and striking police officers, it may be relevant to whether his use of force was reasonable.  *See Hubbard v. Gross*, 199 F. App'x 433, 444 (6th Cir. 2006) (explaining that, in an excessive force case, evidence that the defendant had arrested the plaintiff before "is independently probative of the reasonableness of [the defendant's] use of force in the instant case"); *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995) ("Keeping

in mind that this trial involved the officers' alleged use of excessive force during the entire confrontation with [plaintiff], we conclude that the district court properly allowed the officers to testify about the facts known to them regarding [plaintiff's] criminal past.").

Here, however, nothing in the record suggests that Nickel knew of Lopez's history of assaulting police officers.[2] Because Nickel did not know about this history, he would have had no reason to think he needed to apply additional force to arrest Lopez, so evidence of these prior convictions is of limited probative value. *See Castro v. County of Los Angeles*, No. 2:13–cv–06631–CAS(SSx), 2015 WL 4694070, at *3 (C.D. Cal. Aug. 3, 2015) (holding that evidence of prior criminal convictions was not relevant to defense against excessive force claim because "[i]t is undisputed that [the officer] was not aware of [plaintiff's] criminal record at the time of the underlying incident"); *cf. Ellis v. Navarro*, No. C 07–5126 SBA (PR), 2012 WL 3580284, at *3 (N.D. Cal. Aug. 17, 2012) ("Thus, evidence of plaintiff's past conduct may be relevant and admissible in an excessive force case provided that the officer was aware of such information at the time of the incident." (cleaned up)). There is also a substantial risk that admission of Lopez's prior conviction for assaulting police would unfairly prejudice the jury to assume that any force exerted by Nickel at the time of the arrest was justified. *See Washington v. City of Philadelphia*, CIV. A. No. 87–7000, 1990 WL 107651, at *5 (E.D. Pa. July 26, 1990) (holding that any probative value of plaintiff's prior conviction for assaulting police was outweighed by the prejudice it would cause her).

---

[2] Rather, the record shows Nickel and Lopez knew each other and, in 2009 or 2010, at least had a cordial relationship, as Nickel drove Lopez from Lancaster to Philadelphia in connection with a separate investigation. (Doc. No. 33-6 at 12–14.)

Because there is little probative value and substantial risk of unfair prejudice, Lopez's motion *in limine* to preclude evidence of her July 2011 conviction for assaulting police is granted.³

### 2.  *2014 and 2016 Convictions*

In 2014 and 2016, Lopez was convicted of the following charges:

- In March 2014, she pled guilty to simple assault;

- In January 2016, she pled guilty to possession with intent to deliver, possession of marijuana, and possession of a controlled substance; and

- In June 2016, she pled guilty to retail theft, harassment, and disorderly conduct.

(Doc. No. 57 at 5.)  Lopez argues that Nickel should be precluded from presenting evidence of these convictions because they are "unrelated" and occurred "years ago" "under totally different circumstances."  (Doc. No. 56 at 4.)

Evidence of a criminal conviction may be admissible to attack a witness's character for truthfulness.  Fed. R. Evid. 609(a); *see, e.g.*, *Brown v. McCafferty*, No. 18-1126, 2020 WL 887915, at *2 (E.D. Pa. Feb. 24, 2020) (allowing defense to present evidence of witness's convictions to impeach his character for truthfulness).  Pursuant to Federal Rule of Evidence 609(a)(1), a conviction for a crime punishable by more than one year imprisonment must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a

---

³ Lopez also pled guilty to possession of a controlled substance and possession of marijuana in July 2011.  The Court finds that evidence of these convictions is also inadmissible.  Because they are for drug-related offenses and occurred *over* ten years ago, they are of very little probative value, and would be likely to unfairly prejudice the jury against Lopez.  *Nye v. Mistick*, No. 1:13-cv-1905, 2015 WL 11565313, at *3 (M.D. Pa. Feb. 26, 2015) ("[W]e find that this drug conviction has very little probative value.  In terms of his character for truthfulness, a past drug conviction is not nearly as relevant as would be a past conviction for a crime involving deceit or fraud.").

defendant.[4]  Fed. R. Evid. 609(a)(1).  And, pursuant to Rule 609(a)(2), a criminal conviction "for any crime regardless of the punishment," *must be admitted* "if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement."[5]  Fed. R. Evid. 609(a)(2).

Initially, because Lopez's 2016 retail theft conviction occurred within the past ten years and constitutes a crime of dishonesty, it is independently admissible pursuant to Rule 609(a)(2). *See United States v. Santiago-Rivera*, No. 3-CR-17-0062017, WL 4551039, at *6 (M.D. Pa. Oct. 12, 2017) (holding that retail theft was a crime of dishonesty and thus admissible for impeachment purposes).[6]

Next, Lopez's remaining 2014 and 2016 convictions, which were for crimes punishable by more than one year imprisonment[7] fall squarely within the ambit of Rule 609(a)(1) and are admissible subject to Rule 403.

Rule 403 allows the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid.

---

[4] Criminal convictions more than ten years from the date of the witness's conviction or release from confinement for it, whichever is later, are not admissible unless the court determines that "(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives the adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use."  *See* Fed. R. Evid. 609(b).

[5] Rule 609(a)(2) is not subject to Rule 403.

[6] Even if Lopez's retail theft conviction did not qualify as a crime of dishonesty, the Court also finds it is admissible pursuant to Rule 609(a)(1).  Retail theft involves an element of dishonesty and this conviction occurred within the last ten years.  There is no question that Lopez's testimony and credibility is of the upmost importance.  Thus, under Rule 403 as detailed herein, the probative value of this conviction is *not* substantially outweighed by a danger of any unfair prejudice.

[7] *See* 101 Pa. Code § 15.66.

403. Because Rule 609(a)(1) is subject to Rule 403, the Court must consider whether the probative value of the prior conviction is substantially outweighed by the prejudicial effect of admitting the conviction.  Fed. R. Evid. 403; *see Sharif v. Picone*, 740 F.3d 263, 272 (3d Cir. 2014).  In so considering, the Court must weigh the following four factors against the potential prejudice in admitting a conviction: (1) the nature of the conviction, (2) the time elapsed since the conviction, (3) the importance of the witness's testimony to the case, and (4) the importance of the witness's credibility to the claim at hand.  *See id.* (citing *United States v. Greenidge*, 495 F.3d 85, 97 (3d Cir. 2007)).  The Court must "ask whether the admission of this conviction ha[s] the potential to so prejudice the jury that its weighing of all the factual issues in the entire case may be impaired."  *Id.* at 274 (cleaned up).  The Court addresses these factors in turn.

First, considering the nature of the convictions for simple assault, harassment, and disorderly conduct, the Court finds these crimes are not directly probative of a witness's character for truthfulness.  *See Dickens v. Taylor*, 655 F. App'x 941, 945 (3d Cir. 2016) (recognizing that "convictions for assault are less probative of a witness's truthful character than convictions involving crimes of deception or dishonesty"); *Brown v. City of Philadelphia*, CIVIL ACTION NO. 18-1126, 2020 WL 1888953, at *4 (E.D. Pa. Apr. 16, 2020) ("[T]he aggravated assault . . . convictions were less probative of honesty."); *Brown v. McCafferty*, 2020 WL 887915, at *2 (holding that crime involving force and violence did not speak to the witness's "honesty and integrity"); *cf. Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997) (holding that plaintiff's conviction for disorderly conduct was inadmissible under Rule 609 because it did not "bear directly on the likelihood that the [witness] will testify truthfully").

However, in looking at the nature of the conviction for drug offenses, although drug offenses are not traditional crimes of dishonesty, some courts in this Circuit have held that drug

crimes involve an element of dishonesty and may be probative of a witness's character for truthfulness. *See United States v. Cooper*, No. 5:19-cr-00001, 2021 WL 3732789, at *7 (E.D. Pa. Aug. 24, 2021) ("[C]ourts have concluded that prior drug convictions are relevant to a defendant's veracity because a drug trafficker lives a life of secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment, whether a truth or a lie." (quoting *United States v. Borrome*, No. CRIM. 97-00224-01, 1997 WL 786436, at *4 (E.D. Pa. Dec. 3, 1997), *aff'd*, 166 F.3d 1206 (3d Cir. 1998))); *Tate v. City of Philadelphia,* No. 13–131, 2014 WL 4249765, at *4 (E.D. Pa. Aug. 28, 2014) ("Prior drug convictions have probative value for impeachment purposes under Rule 609(a)(1)."). Accordingly, the Court finds that Lopez's 2016 conviction for drug offenses is probative of her character for truthfulness.

Second, all of these convictions occurred five to seven years ago. (Doc. No. 57 at 5.) Given the lapse in time between the convictions and this trial, the convictions have diminished probative value, but none of these convictions are so remote in time as to be irrelevant. *See Tate*, 2014 WL 4249765, at *4 (holding that eight-year-old conviction had diminished probative value but was not so remote as to be irrelevant).

The third and fourth factors—the importance of the witness's testimony and her credibility—both weigh in favor of admission. Lopez's testimony and credibility are crucial to this case. Her testimony is key because, other than Michelle Henson, a close friend who allegedly saw the arrest from a distance, Lopez is the only witness testifying in support of her claim.[8] Her credibility is paramount for the same reason. *See Sharif*, 740 F.3d at 273

---

[8] Lopez's credibility is perhaps of even greater importance because much of Henson's version of events deviates from Lopez's own retelling—to say nothing of the version of events propounded by the officers who were on the scene. (*Compare* Doc. No. 40-4, Henson Dep. at 18:6–8 (testifying that, at the time of the initial arrest, she saw Nickel "searching all through [Lopez']s body"—"her back pockets, her

7

(explaining that where the witness is one of the only witnesses testifying as to an incident, their testimony and credibility are "crucial to [their] claim"); *see also Prater v. City of Philadelphia*, Civil Action No. 11–CV–00667, 2012 WL 3930063, at *3 (E.D. Pa. Sept. 7, 2012) ("This case depends upon the jury believing [the plaintiff's] testimony as opposed to that of [the police officers]. [The plaintiff's] testimony will therefore be necessary to establish his claims . . . ."); *Donahue v. City of Hazelton*, Civil No. 3:14-1351, 2021 WL 4810700, at *3 (M.D. Pa. Oct. 14, 2021) (holding that the plaintiff's testimony was "clearly essential" to establishing his Section 1983 claim because the plaintiff's case turned on whether the jury believed him or the police officers).

Considering these factors together, the probative value of evidence of Lopez's 2016 conviction for drug offenses outweighs its potential prejudicial effect, and a curative instruction will ensure the jury does not consider this conviction for an improper purpose. But, for the remaining convictions (simple assault, harassment, and disorderly conduct), the Court finds that their probative value is substantially outweighed by the danger of unfair prejudice. The Court concludes that there is too great a risk that evidence of these convictions may cause the jury to believe that Lopez has a "propensity towards acting in conformity with a prior bad act," and it would lead to confusion for the jury on determining whether there was excessive use of force. *Sharif*, 740 F.3d at 273–74 (internal citations omitted).

In summary, the Court denies Lopez's motion *in limine* to preclude evidence of her 2016 retail theft and drug convictions and will allow their admission for the limited purpose of

---

front pockets . . . the band of her bra") *with* Doc. No. 40-3, Lopez Dep. At 92:6–10 (testifying that Nickel searched her bra only following the incident in the back of the patrol car, after she had been driven away from the scene of the initial arrest and away from Henson's view).)

impeaching Lopez's character for truthfulness. The Court grants her motion *in limine* to exclude evidence of her other 2014 and 2016 convictions.

### 3. 2018 Conviction Associated with the Incident

In March 2018, following the arrest at issue in this case, Lopez pled guilty to possession of a controlled substance, possession of marijuana, tampering with evidence, and disorderly conduct. (Doc. No. 57 at 2.) She argues that this evidence ought to be excluded because it is meant to "cast [her] as a bad actor." (Doc. No. 56 at 3.)

Evidence of her conviction for these offenses is admissible pursuant to Rule 609 because the conviction is for crimes punishable by imprisonment of more than one year and occurred well within the past ten years. Fed. R. Civ. P. 609. However, the Court must again weigh the *Greenidge* factors and consider whether, under Rule 403, the probative value of this evidence is substantially outweighed by its prejudicial effect. *Sharif*, 740 F.3d at 272.

Although this conviction is recent and Lopez's testimony and credibility are paramount, as described above, the Court finds that this conviction does not involve traditional crimes of dishonesty and the probative value is substantially outweighed by the prejudicial effect. Evidence of this conviction will likely confuse the issues and mislead the jury regarding whether the use of force was reasonable. *See Perez v. Lloyd Indus., Inc.*, No. 16-cv-1079, 2019 WL 9584403, at *5–6 (E.D. Pa. Mar. 26, 2019) (granting motion to exclude evidence of drug convictions because "the prejudicial effect substantially outweighs the probative value"); *Dover-Hymon v. Southland Corp.*, Civ. A. No. 91–1246, 1993 WL 419705, at *6 (E.D. Pa. Sept. 27, 1993) ("Evidence of a prior drug conviction is only minimally probative of a witness' character for truthfulness, if at all. Moreover, any relevance such a conviction may have for impeachment purposes would be substantially outweighed by the risk of unfair prejudice and confusion of the

9

issues."). And, given the Court's ruling that Lopez's 2016 prior convictions for retail theft and drug offenses are admissible, *see supra* Section I.A.2, further evidence challenging her honesty would be cumulative. *See Del Grosso v. City of Philadelphia*, Civil Action No. 09-1000, 2010 WL 3384822, at *11 (E.D. Pa. Aug. 20, 2010) (holding that, because impeachment of plaintiff by admission of his conviction for possession with intent to distribute would be cumulative, "the prejudice to Plaintiff outweighs the probative value of this impeachment evidence").

Accordingly, Lopez's motion *in limine* to exclude any evidence of the 2018 conviction is granted.

### B. The Incident in the Back of the Patrol Car

Lopez also seeks to preclude evidence and testimony about what she calls the "second incident."[9] (Doc. No. 56 at 4.) Lopez argues that "the events which occurred after Plaintiff's arrest in the patrol car have no relevance to the circumstances Defendant Nickel confronted at the time of the arrest." (*Id.*) Nickel responds that this incident is relevant "to show the likely cause of the redness and marks on [Lopez's] wrist" because, throughout the second incident, Lopez twisted her handcuffs around and contorted her body. (Doc. No. 57 at 4.)

The Court will permit Nickel to offer limited testimony and video evidence to explain this potential source of the red marks on Lopez's wrists—*i.e.*, he will be permitted to testify that

---

[9] The "second incident" refers to the skirmish in the back of the patrol car following Lopez's arrest in which she leaned forward and disappeared behind the divider in the patrol car multiple times. (Doc. No. 33-5 at 80:17–20, 86:18–23, 87:7–17.) Although Nickel told Lopez to stop leaning forward, she continued to do so. (*Id.* at 81:3–21.)

Following this incident, Nickel pulled over, saw Lopez chewing something (which turned out to be marijuana), and saw white powder (later determined to be cocaine) all over the back seat. (*Id.* at 82:2–9, 90:4–91:7.) This prompted him to search Lopez's person. (*Id.* at 106:3–19.) Lopez's complaint included a claim alleging that this search was a sexual assault, but the Court granted Nickel's motion for summary judgment on that claim. (*See* Doc. No. 50 at 17.)

she was moving her body, arms, and wrists while in the back of the patrol car. Nickel will not, however, be permitted to provide testimony or video evidence regarding Lopez's consumption of marijuana, the cocaine on the backseat, or the subsequent search.[10]

Evidence of the fact that Lopez was ducking up and down in the backseat of the patrol car is relevant to the potential cause of the redness on Lopez's wrists and is unlikely to unfairly prejudice the jury. *Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 386 F. App'x 214, 219 (3d Cir. 2010) (affirming district court decision to admit evidence of the cause of plaintiff's losses because such "evidence had great probative value that was essential to [the defendant's] defense] and was not substantially outweighed by the danger of unfair prejudice to [the plaintiff]"); *Sales v. Elite Express*, CIVIL ACTION No. 05-4931, 2006 WL 8459619, at *2 (E.D. Pa. Nov. 30, 2006) (permitting the defendant to introduce evidence of an alternative source of plaintiff's alleged damages).

However, evidence that Lopez had marijuana and cocaine on her person and was attempting to digest the marijuana is irrelevant to her excessive force claim and is substantially more prejudicial than probative.[11] The relevant inquiry in assessing the excessive force claim is whether Nickel used reasonable force given the facts and circumstances known to him at the time of the arrest. *See Graham*, 490 U.S. at 397. Whether Lopez possessed drugs that Nickel did not find until *after* the arrest is not probative of the facts and circumstances confronting

---

[10] Notwithstanding this holding, if Lopez or any other witness testifies that Nickel sexually assaulted Lopez on November 8, 2017, Nickel may be permitted to offer more detailed testimony regarding the incident in the back of the patrol car.

[11] Nickel argues that Lopez's possession of marijuana and cocaine at the time of the arrest is relevant to the analysis of whether Nickel's force was reasonable because it shows "why Lopez resisted Lt. Nickel's attempt to handcuff her." (*See* Doc. No. 57 at 4.) The Court disagrees—the inquiry turns solely on the facts and circumstances known to the officer at the time of the arrest. *See Graham*, 490 U.S. at 397. So what is relevant is *whether* Lopez was visibly resisting arrest, not *why* she may have been doing so. *Id.*

Nickel *at the time* of the arrest. *Id.* ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). In addition to having limited probative value, evidence of the fact that Lopez had drugs on her person, consumed marijuana, and spilled cocaine on the back of the patrol car is likely to unfairly prejudice the jury against her. *Ridley v. Costco Wholesale Corp.*, No. Civ. A. 204CV-3860, 2005 WL 2562726, at *6 (E.D. Pa. Oct. 12, 2005) (excluding evidence of plaintiff's drug use "because a fact-finder would likely use evidence of [his] involvement with drugs to characterize him as a person who is not law-abiding").

Accordingly, the Court grants Lopez's motion *in limine* to exclude evidence and testimony about the "second incident"; however, the Court will allow Nickel to offer limited testimony and evidence that Lopez was moving around in the back of the patrol car to explain a potential source of the red marks on her wrists.

**II.     Nickel's Motion *in Limine***

Nickel seeks to preclude testimony and evidence regarding unrelated encounters between himself and nonparties, including a video of an arrest of a male and testimony from Michelle Henson regarding encounters she has had with Nickel. (Doc. No. 55.) Nickel argues that this is inadmissible character evidence. (*Id.* at 2.) Lopez argues that this evidence is relevant to show Nickel's tendency to use excessive force in interactions with citizens and to assess punitive damages. (Doc. No. 58 at 3.)

The Court considers both arguments in turn.

*A.     Character Evidence*

Nickel argues that evidence of other interactions he has had with nonparties is inadmissible character evidence. (Doc. No. 55 at 5.) The Court agrees—evidence of his

12

interactions with nonparties would only be offered to show he has a propensity for using excessive force in interactions with citizens.[12]

Evidence of an act "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Evidence that an officer may have used force in other settings cannot be offered to prove that he used excessive force at the time of the arrest at issue. *See, e.g.*, *Palmer v. Nassan*, 454 F. App'x 123, 126 (3d Cir. 2011) (affirming exclusion of evidence of other excessive force lawsuits against the defendant because the plaintiff's argument was "simply that if [the defendant] had used excessive force on past occasions, he was more likely to have used it here"); *Nwegbo v. Borough*, No. 12–CV–05063, 2013 WL 3463504, at *2 (E.D. Pa. July 10, 2013) (holding that the plaintiffs were not permitted to present evidence of prior excessive force suits against the defendant because "this is nothing more than an attempt to use allegations of prior acts to demonstrate a propensity"); *Washington v. Goshert*, No. 12-924, 2013 WL 1388723, at *1 (E.D. Pa. Apr. 5, 2013) (holding that the plaintiff could not admit evidence of an unrelated interaction the defendant had with a third party because the plaintiff intended to use the evidence "to show [the defendant's] propensity to stop vehicles and search their occupants without probable cause").

For evidence of an officer's other interactions to be admissible, it "must be offered for a proper purpose, *i.e.*, a purpose other than showing that an individual has a propensity or

---

[12] Lopez argues this is "me too" evidence: "evidence of Defendant's disproportionate force mirrors the allegations Plaintiff makes about Defendant," so the evidence must be admissible to show that Nickel used excessive force in arresting Lopez. (Doc. No. 58 at 4.) "Me too" evidence is a concept from the employment discrimination context that evidence of prior bad acts *may or may not* be admissible to show workplace discrimination. *See Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167–68 (3d Cir. 2013) ("[S]o-called 'me too' evidence in an employment discrimination case is neither *per se* admissible nor *per se* inadmissible." (citing *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008))). This Court is not aware of any case admitting "me too" evidence in the Section 1983 context.

disposition for certain activity." *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 520 (3d Cir. 2003). Here, Lopez lacks a permissible, relevant use of the purported Rule 404(b) evidence. In assessing her Section 1983 claim, the jury must determine whether the force Nickel used "was objectively reasonable under the circumstances and facts confronting him at the time, *without regard to his underlying motivation.*" *Mosley v. Wilson*, 102 F.3d 85, 95 (3d Cir. 1996) (emphasis added); *see also Graham*, 490 U.S. at 397. Because this is an objective inquiry, Nickel's "subjective intent or motivation is irrelevant," so his unrelated interactions with nonparties are not germane to the jury's determination of whether he used reasonable force in arresting Lopez. *Washington*, 2013 WL 1388723, at *2 (explaining that evidence of a different stop by the defendant "sheds no light on the question whether plaintiff's constitutional rights were violated when one or both defendants allegedly used excessive force in subduing him"); *Thompson v. Mancuso*, No. 08–3638, 2009 WL 2616713, at *7–8 (E.D. Pa. Aug. 25, 2009) (holding that evidence of an officer's prior interactions was inadmissible because "there is limited probative value . . . because intent is not a central issue in deciding whether the force used by Defendants was reasonable" and "[t]here is a substantial risk that the jury would view all the aforementioned evidence of prior misconduct as 'did it once, did it again' evidence").

Thus, evidence of Nickel's interactions with nonparties is inadmissible character evidence.

### B. *Punitive Damages*

Lopez also argues that evidence of Nickel's other interactions shows that he intended to use excessive force against Lopez and thus is admissible because she is seeking punitive damages. In a Section 1983 claim against individual defendants, a jury may assess punitive damages "when the defendant's conduct is shown to be motivated by an evil motive or intent."

14

*Brennan v. Norton*, 350 F.3d 399, 428 (3d Cir. 2003) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

Even though evidence of Nickel's intent may be relevant to Lopez's claim for punitive damages, the Court must engage in a Rule 403 balancing to determine its admissibility. Here, the incidents Lopez seeks to introduce show Nickel's interactions with *other people*, *not Lopez*. It is not clear how evidence that Nickel may have used excessive force in interacting with *other people* is probative of whether he harbored animus *toward Lopez*. Moreover, there is a high likelihood that evidence showing that Nickel may have used excessive force in other contexts would cause unfair prejudice, confuse the issues, mislead the jury, and cause undue delay.[13] *See Montoya v. Shelden*, 898 F. Supp. 2d 1279, 1300 (D.N.M. 2012) ("[A]lthough evidence of the unrelated § 1983 cases against [the defendants] may have probative value of [their] mental state . . . , the Court concludes that the danger of unfair prejudice substantially outweighs any probative value the evidence may have."); *Baker v. County of San Diego*, No. 09-cv-1194, 2012 WL 1903899, at *3 (S.D. Cal. May 24, 2012) (excluding evidence of prior alleged civil rights violations offered as proof of intent for punitive damages because "the evidence may be used to impose liability for an improper basis").

Because evidence of Nickel's interactions with nonparties is substantially more prejudicial than probative, it is not admissible to prove punitive damages.

\* \* \*

---

[13] If the Court were to allow the admission of the video showing Nickel's arrest of a male (or any of Nickel's alleged interactions with other nonparties), it would in effect cause a mini-trial on whether Nickel's use of force was reasonable during the arrest of that individual. As such, the probative value of this evidence is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and undue delay.

Evidence of Nickel's interactions with nonparties would be offered only to prove that he has a propensity for using excessive force and has no other relevance to the claims at issue. Accordingly, the Court grants Nickel's motion *in limine*.

## III.     Conclusion

For the reasons discussed above, the Court grants in part and denies in part Lopez's motion *in limine* and grants Nickel's motion *in limine*.

An appropriate order follows.